UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re ) | | |
| ) | | |
| RAFAEL AQUILINO GARCIA, ) | Case No. 6:09-bk-14555-KSJ | |
| ) | Chapter 7 | |
| Debtor. ) | | |
| ) | | |
| | | |
| FIDELITY NATIONAL TITLE ) | | |
| INSURANCE COMPANY, ) | | |
| ) | Adversary Proc. No. 6:10-ap-00001-KSJ | |
| Plaintiff, ) | | |
| vs. ) | | |
| ) | | |
| RAFAEL AQUILINO GARCIA, ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |
| ) | | |

MEMORANDUM OPINION GRANTING FIDELITY NATIONAL
TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

In 2002, the plaintiff, Fidelity National Title Insurance Company,[1] extended a home equity line of credit to the debtor, Rafael Aquilino Garcia, secured by a home then owned by Garcia. Fidelity now seeks a summary judgment on its request to except from discharge under § 523(a)(6) of the Bankruptcy Code[2] outstanding debts Garcia incurred on the line of credit, alleging Garcia sold the property in 2003 without its knowledge or consent, and that Garcia continued to draw on the line of credit post-sale for nearly seven years.[3] To except a debt from discharge under § 523(a)(6), a plaintiff must prove that the defendant deliberately and intentionally injured the

---

[1] The original lender was Fleet National Bank. Bank of America, as successor to Fleet National Bank, initiated this adversary proceeding. Bank of America assigned the HELOC agreement at issue to Fidelity National Bank, who is now the sole remaining plaintiff (Doc. No. 16).
[2] All references to the Bankruptcy Code shall be to Title 11 of the United States Code.
[3] Doc. No. 25.

plaintiff or the plaintiff's property by a willful and malicious act.[4]  Because the Court finds Garcia acted willfully and maliciously when he sold Fidelity's collateral without its consent or knowledge, and because Garcia has raised no factual issues to preclude summary judgment, the Court grants Fidelity's motion.

The facts are undisputed.  On September 23, 2002, Fidelity and Garcia entered into a home equity line of credit agreement (the "HELOC").  As collateral, Garcia granted Fidelity a junior mortgage on his home located at 274 Milford Street, Brooklyn, New York.  Fidelity somewhat belatedly recorded the mortgage on August 3, 2003.

On May 23, 2003, *prior* to Fidelity recording its mortgage, Garcia sold his home to Ruth Liranzo without disclosing to her the existence of the HELOC or asking Fidelity to consent to the sale.  Garcia also did not use the sales proceeds to pay the balance then due under the HELOC.  Under New York law, a bona fide purchaser without notice and for valuable consideration takes property free and clear of a subsequently recorded mortgage.[5]  Because Garcia did not disclose the HELOC to Liranzo, and because Fidelity's mortgage was unrecorded at that time, Liranzo was a bona fide purchaser.  Thus, Fidelity likely is no longer able to look to its collateral for repayment of the HELOC.[6]

For seven years post-sale, Garcia routinely used the line of credit, making regular payments.  As of January 2009, when payments stopped, the balance due under the HELOC was $52,400.[7]  In May 2009, Fidelity commenced a foreclosure action and for the first time learned Garcia had sold his home to Liranzo years earlier.

---

[4] 11 U.S.C. § 523(a)(6); *Grogan v. Garner*, 498 U.S. 279, 287 (1991); *Hope v. Walker* (*In re Walker*), 48 F.3d 1161, 1163-65 (11th Cir. 1995).
[5] NY Real Prop. Law § 291 (McKinney 2011).
[6] *Id.*; *see, e.g., In re Brosnahan*, 312 B.R. 220, 223 (Bankr. W.D.N.Y. 2004) ("Under New York Real Property Law § 291, an unrecorded mortgage is valid as between the mortgagor and mortgagee, but is otherwise void as against a bona fide purchaser who first records its interest.").
[7] Garcia listed this debt in the amount of $52,400 on Schedule D, indicating that the property was sold to Ruth Liranzo in 2003.

On September 29, 2009, Garcia filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On January 2, 2010, Fidelity timely initiated this adversary proceeding under § 523(a)(6) to except the outstanding HELOC debt from discharge.[8] Fidelity now moves for summary judgment.[9]

Under Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[10] The moving party has the burden of establishing the right to summary judgment.[11] In determining entitlement to summary judgment, a court must view all evidence and make all reasonable inferences in favor of the party opposing the motion.[12] "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[13] A material factual dispute thus precludes summary judgment.[14]

Section 523(a)(6) of the Bankruptcy Code provides an exception to discharge when a debtor willfully and maliciously injures another entity or the property of another. To except a debt from discharge under the willful and malicious discharge exception in § 523(a)(6), a plaintiff must prove each of the § 523(a)(6) elements by a preponderance of the evidence.[15] Thus, a plaintiff must prove that a debtor: (1) deliberately and intentionally (2) injured the plaintiff or the plaintiff's property by (3) a willful and malicious act.[16] Intentional in this context means that the debtor intended the consequences of his act.[17] "The established law is clear that a

---

[8] Doc. No. 1.
[9] Doc. No. 25.
[10] Fed. R. Civ. P. 56.
[11] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[12] *Hayes v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (*citing Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavaro*, 38 F.3d 1571, 1578 (11th Cir. 1994)).
[13] *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 572, 587 (1986).
[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[15] *Grogan v. Garner*, 498 U.S. 279, 287 (1991).
[16] 11 U.S.C. § 523(a)(6); *Grogan* at 287; *Hope v. Walker* (*In re Walker*), 48 F.3d 1161, 1163-65 (11th Cir. 1995).
[17] *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998).

debtor must commit some type of intentional tort directed against the claimant or his property in order for a court to find that the resulting damages are nondischargeable."[18]

Two sister bankruptcy courts in this district have held that the sale of personal property without notice to the secured lender constitutes a willful and malicious conversion of property.[19] The *Petsch* Court stated that "[w]here a debtor has disposed of collateral without the permission or knowledge of the lienholder, and the debtor understands the effect of the security agreement, such unauthorized disposition constitutes a willful and malicious conversion so as to render the debt arising therefrom nondischargeable."[20]

The Court now slightly extends this reasoning to the sale of real property collateral without notice to the secured party. Garcia's sale of Fidelity's collateral, without first providing notice to Fidelity, was deliberate, harmed Fidelity, and was willful and malicious. The rationale for this holding is simple: Garcia plainly knew under the terms of the HELOC that he was required to notify Fidelity of his intent to sell its collateral,[21] and moreover, as an experienced real estate agent, knew that selling the collateral would harm Fidelity's interests. Instead of disclosing the sale, however, Garcia hid the sale from Fidelity *for nearly seven years* continuing to use the HELOC, racking up $52,400 in debt he now seeks to discharge. His behavior was clearly willful and malicious.

Garcia's argument that he had no intention to harm Fidelity is baseless. Garcia's deposition testimony, to the contrary, shows he fully understood the terms of the HELOC agreement.[22] Moreover, Garcia's occupation as a licensed real estate agent is evidence that he

---

[18] *In re Nofziger*, 361 B.R. at 243.

[19] *In re Giffen*, 195 B.R. 951, 953 (Bankr. M.D. Fla. 1996) ("[A] debtor's unauthorized sale of collateral subject to a security agreement is a willful and malicious conversion of property and renders the debt arising from the agreement nondischargeable."); *In re Muto*, 124 B.R. 610, 611 (Bankr. M.D. Fla. 1991) ("The law is well settled that the sale of collateral without the consent of the lienholder constitutes willful and malicious injury giving rise to an exception to discharge under 11 U.S.C. § 523(a)(6).").

[20] *Matter of Petsch*, 82 B.R. 605, 607 (Bankr. M.D. Fla. 1988).

[21] Paragraph 14(c) of the HELOC states "a transfer of title to or sale of an interest in the Property without the Lender's consent" is an event of default (Doc. No. 25 at Ex. A).

[22] Doc. No. 25 at Ex. C, p. 17.

understood the basic terms of the agreement and must have known that Fidelity would be frustrated in its efforts to foreclose on the home, now owned by Liranzo, in the event of default.[23]

Garcia also argues there is a significant difference between a mortgage and a security agreement for purposes of § 523(a)(6), which should prevent this Court from excepting this debt from discharge. There is not. The Bankruptcy Code defines a security interest as a "lien created by an agreement."[24] A mortgage and security agreement both fall under this definition by creating a security interest in either real property *or* personal property. The lien allows the secured party to repossess the collateral in the event of default. When a debtor sells collateral without consent from the secured party, the secured party is denied its right to directly repossess the collateral in repayment of the debt. The damage to the secured party's rights is the same regardless of whether the collateral is real or personal property.

Finally, Garcia argues the debt is dischargeable because Fidelity did not timely record the mortgage, and, as such, did not have a perfected interest at the time Garcia sold the property to Liranzo.[25] Whether the mortgage was perfected, however, makes no difference to the Court's analysis; Fidelity's tardiness in perfecting its mortgage has no bearing on whether Garcia's actions harmed Fidelity or its right to seek repayment of the loan by foreclosing upon the home. The purpose of perfecting a lien is to establish priority over third parties who may have competing interests in the collateral. Because of Garcia's actions, Fidelity likely is no longer able to foreclose on the collateral for repayment of the HELOC. Fidelity was substantially harmed by Garcia's action in selling its collateral without its consent. If Garcia had asked for such consent, in all likelihood, the lender would have required payment on the HELOC and, today, be fully paid. Garcia's intentional subterfuge prevented the lender from receiving its

---

[23] *Id.* at p. 31-32.
[24] 11 U.S.C. § 101(51); *See also* Black's Law Dictionary 1478 (9th ed. 2009) ("Security interest" defined as "a property interest created by agreement or by operation of law to secure performance of an obligation (esp. repayment of a debt)."); Black's Law Dictionary 1478 (9th ed. 2009) ("Security agreement" defined as "an agreement that creates or provides for an interest in specified real or personal property to guarantee the performance of an obligation.").
[25] Doc. No. 31.

share of the proceeds from the sale of the home to pay off the HELOC, and Garcia is not entitled to benefit from the lender's belated recordation of its mortgage as an excuse for his own misbehavior.

In conclusion, the Court finds Garcia deliberately, willfully, and maliciously harmed Fidelity's interests when he sold its collateral without its consent or knowledge and continued to draw on his line of credit with Fidelity. Accordingly, the Court will grant Fidelity's motion for summary judgment. Garcia's debt to Fidelity under the HELOC in the amount of $52,400 (together with interest, costs, and attorney fees as allowed under the HELOC[26]) is non-dischargeable under § 523(a)(6).

Fidelity is directed to submit an affidavit itemizing all costs and attorney fees on or before February 28, 2011. If Garcia objects to any amounts sought in the affidavit, he must file an objection no later than March 18, 2011. Upon consideration of Fidelity's affidavit and any timely objection by Garcia, the Court will enter a separate judgment consistent with this opinion.

DONE AND ORDERED in Orlando, Florida, on February 9, 2011.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Plaintiff's Counsel: Michele A. Cavallaro, Fidelity National Title Group, 6600 N. Andrews Avenue, Suite 300, Fort Lauderdale, FL 33309

Defendant's Counsel: Brian M. Mark, Brian Michael Mark, P.A., 100 Church Street, Kissimmee, FL 34741

---

[26] Paragraph 15 of the HELOC provides Fidelity is entitled to costs, expenses, and attorneys' fees in the event of default (Doc. No. 25 at Ex. A).